**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ROBERT NEWELL,**

    **Plaintiff,**

**v.**                                                   **Case No. 8:08-cv-472-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-four years of age at the time of his administrative hearing in August 2007. Plaintiff has an eleventh grade education. His past relevant work was as a van driver, forklift operator, groundskeeper for Busch Gardens, swimming pool cleaner, laborer, and machine operator. Plaintiff applied for disability benefits and Supplemental Security Income payments in September 2004, alleging disability as of July 30, 2004, by reason of back and leg pain, deafness in the left ear, and dizziness. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he is unable to work due to his bad attitude, depression, anxiety, and inability to hear.[1] He testified that he hurts from "the top of his neck down to [his] toes." By his account, he has tingling in his feet, his back hurts, he cannot breathe, he gets dizzy, and he cannot stand on his feet for long.

Plaintiff was asked numerous questions by the ALJ and the VE regarding his prior employment. Plaintiff testified that he has been fired from every job he has ever had because of, in part, his hearing problems, but more so due to his attitude.[2] According to Plaintiff, his job as a van driver involved picking up parts from warehouses in the mornings and operating the forklift in the afternoons. He had to leave this job because being outside made him dizzy, sweaty, and short of breath such that it was difficult for him to breathe. When Plaintiff worked at Adventure Island cleaning pools, he was fired after "losing his cool" and "getting into it" with a female employee. After a one-year suspension, he went to work at Busch Gardens, but again had problems with a supervisor and was fired because of his attitude.

---

[1] At the outset of the hearing, as well as periodically throughout, Plaintiff and his counsel made reference to the difficulty Plaintiff was having hearing the questions. Plaintiff explained that he had an ear operation when he was ten years old; his eardrum was essentially cut in half, and he has been partly deaf most of his life. Plaintiff testified that he does not have hearing aides because he cannot afford them. He uses a "Miracle Ear," but at the time of the hearing, its battery was dead and Plaintiff did not have money to purchase another one.

[2] Plaintiff has discussed his attitude problem with his doctor. As a result, his doctor recently doubled his medication to see if it would help.

2

Plaintiff testified that he worked as a forklift operator at Tampa Bay Fisheries, but had to leave that job because he was too slow and the foreman lady kept screaming at him and he "flew off the handle" back at her. When he worked as a spray painter, he was injured on the job when another employee pushed a frame up against his booth. He fell over scraping his elbow and shoulder, and a big metal door fell on his back. His company put him on light duty (sweeping) after that, but then fired him. After being fired in July 2004, he applied for unemployment benefits, which were denied at first. After a "waiting period," he did receive benefits but then was cut off after a month or two.

Regarding his educational background, Plaintiff attended school up until a month before completion of the twelfth grade. He did not graduate because he drank whiskey and passed out in the classroom. He planned to go into the Navy like his father had, but could not pass the physical examination because of his difficulty hearing and because he "wasn't flatfooted."

As for daily activities, Plaintiff testified he can stand for an hour and a half to two hours and then his legs give out on him. He cannot walk a half a mile without his feet and legs hurting. Plaintiff initially testified that he can sit for eight hours, with getting up and walking around outside after four hours and then sitting back down again. However, he then stated that he cannot sit for very long because of the pain in his back that hurts constantly and tingles into his legs. He claims that even with medication, he is in pain all day long, as if someone is sticking a knife in his back. Plaintiff testified that he has difficulty breathing. It makes it difficult for him to walk, lift things, and bend over. Plaintiff acknowledges he used to smoke a half a pack of cigarettes a day, but testified that he has given up smoking. During

3

the hearing, Plaintiff complained that his feet felt tingly. He testified that this happens all the time and it affects his ability to do things because he cannot walk for a period of time which then causes his nerves to get jumpy. According to Plaintiff, it had been almost three years prior to the hearing since he had alcohol to drink. By his account, he tried illegal drugs but did not like them and denies using any.

Plaintiff used to receive food stamps, but testified they were discontinued because they wanted him on a work program which he states there was no way he could do. They requested a doctor or lawyer's note to that effect, but they would not accept the note he gave them from Dover Clinic. Plaintiff testified that if he can get his disability started then he can get food stamps. That would help out him and his mother, with whom he lives, because she tries to help him out, but she cannot really afford it.

Plaintiff testified that he does not get along well with his mother or his brother. By his account, he has no friends any more because he does not go out drinking with them. He has a neighbor who does not drink or smoke either and he will come over, cookout, and watch movies. Nevertheless, Plaintiff described himself as a loner with no friends. *See* Plaintiff's testimony (R. 381-406).

Next, the ALJ took testimony from Steven Simon, a vocational expert ("VE"), who first testified as to the classification of Plaintiff's prior work. According to the VE, Plaintiff's past work, as performed by him, included heavy (industrial truck operator), medium (van driver, construction worker II, drum dryer machine operator, molding machine operator, spray painter II, carpenter), and light (commercial cleaner, swimming pool servicer, parking attendant) exertional levels. In response to a hypothetical of an individual with limited

4

education and assuming the exertional capacity for all levels of work but not involving extreme noises or having to listen to conversations at a distance, the VE opined that such individual could perform some of Plaintiff's prior jobs as performed in the economy including the van driver, the commercial cleaner, the swimming pool servicer, the spray painter II, and the parking attendant. With the added limitation that such hypothetical individual would have to be absent from work one day a week, there would be no jobs available in the economy. Upon questioning by Plaintiff's counsel, the VE testified that the jobs of pool servicer, cleaner, van driver, and parking lot attendant would be available even with limitations for avoidance of concentrated exposure to fumes, dust, etc, and no more than occasional contact with the public. Although counsel questioned the VE about hearing difficulties, he did not pose limitations to the VE on such that could be quantified. (R. 421-22). *See* VE Testimony (R. 417-22).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Pertinent to this appeal, the Plaintiff's date last insured is September 30, 2007.

By his decision of October 12, 2007, the ALJ determined that while Plaintiff has a severe combination of impairments related to a remote sensor neural hearing loss in the left ear and a lumbar spine disc protrusion with lumbar radiculopathy,[3] he nonetheless had the

---

[3]The ALJ found that the alleged mood disorder and gastroesophageal disorder were not severe medically determinable impairments. (R. 11).

residual functional capacity to perform up to the full range of medium exertional work.[4]
Upon this finding and the VE's testimony, the ALJ concluded that Plaintiff could perform his past work as a van driver, cleaner, swimming pool worker, spray painter, and parking lot attendant. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 9-16). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

---

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

6

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in finding that claimant's mental impairment and gastritis were non-severe impairments;

(2) The ALJ failed to properly develop the record by failing to pose a comprehensive and complete hypothetical to the VE; and

(3) There was not substantial evidence to support the ALJ's findings that claimant could return to his past work.

On his first claim, Plaintiff argues that the ALJ erred by failing to find that his mental impairment and gastrointestinal problems constituted severe impairments under the Act. Regarding his mental impairment, Plaintiff contends that his testimony about losing jobs due to a bad attitude and an inability to get along with others, referrals to a psychiatrist from his treating source, records from Dr. Bharminder Bedi that document an adjustment and/or mood disorder and a GAF of 55-58,[5] and the use of the prescription medication Lexapro and Depakote establish that his mental impairment met the threshold level for severity. As for his gastrointestinal problems, Plaintiff contends that records from Dr. Ziauddin Shamsi, a

---

[5]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 51 to 60 means "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). *Id.*

gastroenterologist, which document treatment for gastro-esophageal reflux disease, erythema, gastritis, and an ulcer establish that his impairment was more than a slight abnormality. (Doc. 18 at 8-11).

The Commissioner counters that no medical evidence substantiates Plaintiff's claim that he suffers from a severe mental impairment. The Commissioner notes that Dr. Bedi saw Plaintiff only four times, performed no tests, but rather noted Plaintiff's subjective complaints, and noted more than once that Plaintiff was not delusional, psychotic, suicidal, impulsive, loud, agitated, or acting out. As for Plaintiff's GAF score, the Commissioner responds that such ratings alone do not establish the existence of a severe impairment. Additionally, the Commissioner notes that objective testing performed by Dr. Robert G. Moering, a consulting psychologist, indicated that Plaintiff did not suffer from dementia or depression. As to Plaintiff's claim that his gastritis was a severe impairment, the Commissioner urges that none of Plaintiff's treating physicians indicated he had any limitations due to gastrointestinal illness. Moreover, the Commissioner notes that Plaintiff's own testimony, which included a recitation of limitations due to many other alleged impairments, failed to identify how his gastrointestinal condition limited his ability to work. (Doc. 20 at 5-10)

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step two of this five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. If the claimant does not have an impairment or combination of

impairments which significantly limits his ability to do basic work activities, then he is not disabled.[6] *Id.* However, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Id.* A "[c]laimant need show only that h[is] impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant bears the burden of establishing a *prima facie* case of disability this step. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).

Here, even if Plaintiff is correct and he suffers severe impairments related to his mental difficulties and/or gastrointestinal problems, there is no error requiring remand at step two of the evaluation process. As the decision reflects, the ALJ credited Plaintiff with a severe combination of impairments, namely, a remote sensor neural hearing loss in the left ear and lumbar spine disc protrusion with lumbar radiculopathy. (R. 11). That is all the ALJ is required to do at this step. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments

---

[6]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

that together qualify as severe, is enough to satisfy the requirement at step two.). However, the failure to properly recognize and consider all impairments and functional limitations arising therefrom can be problematic at the remaining steps of the sequential evaluation process. At step three, the Plaintiff must show that his impairment or combination of impairments meets or equals the criteria of a listed impairment. Here, there is no error at this step and Plaintiff does not allege otherwise. As for step four, the step at which the ALJ made the disability determination, the Plaintiff must show that his impairment or combination of impairments prevents him from performing his past work. The failure at this step to consider all of a claimant's functional impairments and limitations would require a remand unless the same were properly discounted.[7] In any event, there is no error at step two requiring a remand in this case.

On his second claim, Plaintiff argues that the ALJ's finding that he can perform medium exertional work is not supported by the evidence particularly where, as here, the ALJ's hypothetical posed to the VE failed to fully account for Plaintiff's exertional limitations or his non-exertional limitations of severe hearing loss, tinnitus, and personality disorder. Plaintiff also argues that records submitted after the hearing from his pain management doctor, which support his allegations of pain and numbness in his low back and legs, reflect a disc bulge at L4-L5 and L5-S1 with lumbar radiculopathy and facet joint degeneration and were not included in the hypothetical. Thus, Plaintiff urges that the VE's

---

[7]In this case, Plaintiff does not challenge the ALJ's assessment or subsequent rejection of his subjective allegations or statements about what he is able to do. Nor does he challenge with any degree of specificity the weight the ALJ accorded to the medical opinions of record.

11

opinion that he could perform his past work was based on a hypothetical that failed to account for his low back pain and numbness documented in those records. Additionally, Plaintiff contends that the ALJ failed to include in the hypothetical his dizziness and shortness of breath due to upper respiratory problems. Further, although the ALJ's hypothetical limits Plaintiff's work environments to those which do not involve conversation from a distance, Plaintiff urges that this grossly understates the severity of his hearing limitations. (Doc. 18 at 11-14).

In response, the Commissioner argues that the ALJ properly found that Plaintiff could perform his past relevant work, and it was Plaintiff's burden to establish that he could not. While the hypothetical posed to the VE referenced the capacity to perform "all levels of work," none of the past jobs the VE ultimately identified required exertion beyond the medium level. Thus, any slight variation in the hypothetical was, at most, harmless. Moreover, the ALJ did not err by failing to include alleged mental impairments or shortness of breath where the ALJ properly evaluated such impairments and determined them to be non-severe. As to the ALJ's alleged failure to include limitations associated with Plaintiff's back condition in the hypothetical question posed to the VE, the Commissioner urges that the ALJ considered and appropriately accounted for Plaintiff's back condition in his findings as to Plaintiff's RFC. Even though the medical records from Plaintiff's pain management physician were submitted post-hearing, they were nevertheless reviewed prior to the ALJ rendering his decision. Similarly, as to Plaintiff's hearing condition, the Commissioner submits that the ALJ fully considered the Plaintiff's medical records, as well as Plaintiff's behavior at the hearing. While Plaintiff argues that the ALJ minimized the limitations that

12

Plaintiff's hearing loss could impose, he nevertheless fails to articulate what limitations beyond the RFC the ALJ should have included. (Doc. 20 at 11-15).

By complaining about certain impairments and related limitations that the ALJ should have included in the hypothetical question posed to the VE (a step five consideration) but did not, Plaintiff essentially challenges the ALJ's determination of his residual functional capacity ("RFC") (a step four consideration).[8] At step four of the sequential evaluation, the ALJ assesses the claimant's RFC and past relevant work. If the claimant demonstrates his inability to perform past work, the burden of proof shifts to the Commissioner at step five to show that the claimant retains the residual functional capacity to perform work in the national economy, given his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv-v), 416.920(a)(4)(iv-v). Where a claimant suffers nonexertional impairments, this showing is often made with the assistance of a vocational expert.[9] Here, although the ALJ employed the

---

[8]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440.

[9]The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004).

services of a VE, the decision was made at step four. For the reasons that follow, I am unable to conclude that the ALJ reversibly erred in the manner alleged.

At the administrative hearing, the ALJ asked the VE to assume "the exertional capacity for all levels of work but not involving extreme noise environment or having to listen to conversations at a distance." (R. 417-18). Given that hypothetical, the VE testified that Plaintiff could perform past work as a van driver (medium work), cleaner (heavy work that Plaintiff performed at the light level), swimming pool servicer (medium work that Plaintiff performed at the light level), spray painter II (medium work), and parking lot attendant (light work). *Id.* at 418. According to the VE, Plaintiff could also perform past work as a swimming pool servicer, cleaner, van driver, and parking lot attendant if additional limitations for avoiding dust, fumes, etc., and no more than occasional interaction with the public were imposed. *Id.* at 419-20. By the time of his Decision, the ALJ had received the records from Dr. Sidhom, Plaintiff's pain management doctor, who confirmed Plaintiff's low back pain and allegations of tingling in the legs. As a consequence, the ALJ reduced Plaintiff's exertional capacity to that of medium work in light of his back condition. (R. 12). Thus, the ALJ determined that Plaintiff retained the functional capacity to perform up the full range of medium exertional work with the avoidance of working in a noisy environment or having to listen to conversations at a distance. *Id.*

While he urges otherwise, Plaintiff fails to demonstrate that the hypothetical posed to the VE was inadequate or that record does not support the ALJ's determination of his RFC. Although the ALJ did not limit the exertional level with the VE, in light of the VE's testimony that three of the jobs required medium exertion and one light exertion, any error in

14

this regard is harmless.[10]  Similarly, although the ALJ did not include limitations in his RFC about dealing with the public or exposures to fumes/dust, the VE indicated that past jobs would be available even with those limits.  As for Plaintiff's complaints about his hearing, it is worth pointing out that Plaintiff's hearing loss and tinnitus are conditions which are longstanding in nature and he has worked with both for years.  As for his complaints of dizziness and shortness or breath, Plaintiff points to no specific limitations the ALJ should have included but did not.  Furthermore, Plaintiff was represented by counsel at the administrative hearing.  Aside from questioning the VE about limitations related to contact with the public and exposure to fumes, dust, etc., counsel posed no further measurable restrictions to the VE.  Now, on this appeal, Plaintiff is represented by same firm and complains that the ALJ did not inquire of the VE about Plaintiff's severe hearing loss, tinnitus, a personality disorder, additional limitations relating to low back pain and leg tingling, dizziness, shortness or breath, and an inability to get along with co-workers.  While the court clearly is aware of the ALJ's duty to develop the record, Plaintiff's duty is concomitant at step four of the evaluation process.  Given counsel's failure to pose limitations to the VE related to the above complaints and impairments, it is difficult to fault the ALJ for failing to do the same.  This is particularly true, where, as here, Plaintiff does not challenge the ALJ's assessment of his subjective allegations with regards to his physical and mental limitations or the weight accorded to opinions of record.  Furthermore, Plaintiff does not

---

[10]Furthermore, according to the VE, certain of Plaintiff's past medium exertional jobs were actually performed by Plaintiff at the light exertion level.

15

identify with any degree of particularity what limitations the ALJ should have, but did not, include in his RFC determination and questioning of the VE.[11]

Here, Plaintiff fails to demonstrate that the ALJ reversibly erred.

On Plaintiff's third claim, he urges that remand is warranted to more fully develop the record as to the physical and mental demands of his prior work. According to Plaintiff, the ALJ should have continued questioning the Plaintiff to get an accurate description of the physical demands of his prior jobs, particularly where the medical records from the treating doctors do not support the ALJ's RFC finding that Plaintiff can perform a full range of medium work. Plaintiff asserts that the ALJ's conclusion was premised only on the report of the non-examining state doctor. Further, Plaintiff argues that the ALJ failed to ask any question regarding the *mental* demands of his past work, and the failure to elicit such information constitutes reversible error. (Doc. 18 at 14-17).

To the contrary, the Commissioner argues that the ALJ and the VE both questioned Plaintiff about his prior work activity and the record contained sufficient evidence to apprise the VE and the ALJ of the particular physical and mental demands of each job. In any event, the Commissioner urges that Plaintiff bears the burden of proving that he cannot perform his past relevant work, and it is not the responsibility of the ALJ to prove Plaintiff's case or act as his counsel. While Plaintiff argues that the ALJ should have made a more specific inquiry at

---

[11]The record does not include any medical opinions which speak directly to Plaintiff's functional capacity. At the initial and reconsideration levels, the reviewing state agency physicians and psychologists concluded that Plaintiff did not have a severe physical or mental impairment.

the hearing, the Commissioner contends that Plaintiff again fails to present any evidence as to what testimony might have been elicited that would support his claim. (Doc. 20 at 16-17).

As indicated above, at step four the ALJ must determine whether the claimant is capable of performing his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The review at this step requires consideration of the physical and mental demands of the claimant's former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986). However, at this step, the burden is still upon the Plaintiff to prove that he cannot do this past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

A determination that a claimant can perform his past relevant work, and thus is not disabled, is appropriate where the claimant retains residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-62, 1982 WL 31386, *3 (S.S.A.);[12] SSR 82-61, 1982 WL 31387, * 2 (S.S.A.). Where it is determined that a claimant can perform his past job as he performed it,

---

[12]Social Security Rulings are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

17

the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. SSR 82-63 at *3; *see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work). And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT. *See* SSR 82-61 at * 2.

Upon consideration, I am unable to conclude that Plaintiff is entitled to relief on this claim. Here, the ALJ, with the assistance of a VE, found that Plaintiff was able to perform his past work as a van driver, cleaner, swimming pool worker, spray painter, and parking lot attendant as "most are customarily performed in the national economy and as he actually performed all of them." (R. 15). While I do not disagree with the Plaintiff that the development of the demands of his past work is scant (R. 15, 122-27, 406-16),[13] Plaintiff fails to demonstrate that a remand on this ground would serve any useful purpose. There is no indication that the VE improperly classified Plaintiff's past work and the hearing demonstrates the VE's careful attention to the ALJ's and counsel's inquiries about the same and his ability to perform such work both physically and mentally. Plaintiff does not challenge that the VE improperly characterized any of such work or did not fully understand the demand of such work. Plaintiff makes no showing that he is unable to perform those certain past jobs as those jobs were performed or are performed generally in the national economy. Additionally, as the Commissioner notes, Plaintiff again fails to present any

---

[13]It is not entirely clear why certain administrative submissions calling for such information went uncompleted. *See e.g.* (R. 172-89).

evidence as to what testimony might have been elicited that would support this claim, at least as to the mental and physical demands of his prior work as he performed the jobs. Consequently, any error with regards to this is harmless.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 25th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record